FILED

2005 Mar-21  PM 12:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| DAVID SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-03-S-2364-NE |
| | ) | |
| JOHN E. POTTER, | ) | |
| POSTMASTER GENERAL, | ) | |
| UNITED STATES POSTAL | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment.[1]
Plaintiff claims that defendant "regarded him as disabled" and, for that reason, denied
his application for employment in violation of the Rehabilitation Act of 1973, 29
U.S.C. § 791.   Upon consideration of the pleadings, briefs,[2] and evidentiary
submissions,[3] the court concludes defendant's motion is due to be granted.

## I.  FACTUAL BACKGROUND

### A.    Application for Employment and Denial

Defendant, John E. Potter, is Postmaster General of the United States Postal

---

[1] Doc. no. 22.

[2] Doc. no. 23 (Defendant's Memorandum); doc. no. 30 (Plaintiff's Brief in Opposition); doc.
no. 33 (Defendant's Reply).

[3] Doc. no. 24 (Defendant's Evidentiary Materials); doc. no. 27 (Plaintiff's Evidentiary
Materials, Vol. I); doc. no. 28 (Plaintiff's Evidentiary Materials, Vol. II).

Service ("Postal Service").  The Postal Service contacted plaintiff on May 24, 2001, and informed him that he had been "reached" on the Postal Service's "Register" of potential employment candidates.[4]  The Postal Service indicated an intention to interview plaintiff for a position of "Part-Time Regular Laborer Custodial" at a station located in Huntsville, Alabama.[5]  This job required the employee to perform "manual labor in connection with maintenance and cleaning of the buildings and grounds of [the Huntsville] postal facility," to assist "in firing low pressure boiler[s,] and in making minor repairs to the building and equipment."[6]  The job also required the employee to "stand, stoop, bend, and stretch for long periods of time and to manually lift and carry objects weighing 45 pounds or more, without assistance."[7]

Plaintiff applied for the position on May 28, 2001.[8]  His application was reviewed by Jane Tarpley, a "Human Resources Specialist" employed by the Postal Service.  Tarpley determined that plaintiff met all the requirements for the job except "medical suitability."[9]  She therefore extended a conditional offer for employment: plaintiff would be hired only if he passed a medical evaluation demonstrating that he

_____

[4] *See* doc. no. 24 (Defendant's Evidentiary Materials), Ex. A at Attachment 9.

[5] *See id.*; *see also id.*, Ex. A (Tarpley Declaration), ¶ 6(a) at 4.

[6] Doc. no. 28 (Plaintiff's Evidentiary Materials, Vol. II), Ex. 12.

[7] *Id.*, Ex. 13.

[8] *See* doc. no. 24 (Defendant's Evidentiary Materials), Ex. A at Attachment 10.

[9] *Id.*, Ex. A (Tarpley Declaration), ¶ 6 at 4.  Defendant does not precisely define the meaning of the term "medical suitability."

could withstand the physical requirements of the job.[10]

Plaintiff was examined by Dr. Susie Lynn, in Huntsville, Alabama, on June 20, 2001.  She noted that plaintiff had some pain in his hips, ankles, knees, and lower back.[11]  At Dr. Lynn's request, plaintiff also submitted a copy of a medical evaluation that had been performed by a Dr. Ray Fambrough on March 12, 2001, approximately three months earlier.  Dr. Fambrough recorded that plaintiff experienced mild tenderness in his lower back and an arthritic condition in his right knee and hip, and concluded that he might have difficulty performing a job which required him to stand, climb, and walk for "up to 8 to 10 hours at a time," particularly if plaintiff were required to carry "heavy 70 pound bags[,] etc."[12]

The following items were then forwarded to Dr. Henry Savery, the Postal Service's "Associate Area Medical Director," for review:  Dr. Lynn's medical evaluation; Dr. Fambrough's medical evaluation; and, as plaintiff had previously served in the military, a copy of his "disability rating" from the Department of Veterans Affairs.[13]  Based on this information, Dr. Savery concluded on September 4, 2001 that plaintiff "would have difficulty performing tasks involving heavy manual

---

[10] *See id.*

[11] *Id.*, Ex. A at Attachment 11.

[12] *Id.*, Ex. A at Attachment 3.

[13] *Id.*, Ex. A (Tarpley Declaration), ¶ 6 at 4-5.

3

labor."[14]  Even so, Dr. Savery suggested that the following accommodations would allow plaintiff to perform the duties of a Laborer "effectively and safely":  "no prolonged standing, walking or climbing and no heavy lifting or carrying."[15]  Dr. Savery forwarded his evaluation to Tarpley,[16] who informed plaintiff on September 12, 2001, that his application for employment with the Postal Service was tentatively denied.  Her letter stated:

> Dr. Mr. Scott:
>
> You have been found medically unsuitable to perform the duties of the position of Part-Regular Laborer/Custodial for the Huntsville, AL Post Office.  Our Contract Physician [Dr. Henry Savery] [17] has rated you a moderate risk for employment due to orthopedic problems.  This condition is not compatible with the strenuous activities required for this position, which include:  heavy lifting (up to 70 pounds), heavy carrying (45 pounds and over), straight pulling, pushing, reaching above shoulders, walking, standing, repeated bending and climbing.  He has stated that you would have difficulty performing tasks involving heavy manual labor; therefore, postal employment would place your personal health and safety in jeopardy.[18]

Nevertheless, Tarpley also informed plaintiff that his case would be reviewed by the United States Office of Personnel Management (OPM) as required under federal law.

---

[14] *Id.*, Ex. A at Attachment 13.

[15] *Id.*

[16] *See* Doc. no. 24 (Defendant's Evidentiary Materials), Ex. A (Tarpley Declaration), ¶ 6(g)-(h) at 5.

[17] It is reasonable to infer that Dr. Henry Savery was the "Contract Physician."  According to Tarpley, Dr. Savery "made a risk assessment for Mr. Scott" on September 4, 2001. *Id.*, ¶ 6(g) at 5.

[18] Doc. no. 24 (Defendant's Evidentiary Materials), Ex. A at Attachment 14.

4

Plaintiff's application was reviewed by Phillip Spottswood, an OPM "Medical Policy and Program Specialist."[19] Spottswood informed plaintiff on February 5, 2002, that he had "carefully reviewed all of the medical documentation and related materials and conclude that your medical condition presents an unacceptable safety and health risk and is likely to adversely affect your ability to perform the full range of duties required for the position."[20] That decision effectively made the denial of plaintiff's employment application final.

**B.   Plaintiff's Suit and "Vocational Assessment"**

Plaintiff filed suit on August 26, 2003, claiming that defendant "perceived and regarded [him] as disabled and[,] because of that perception[,] denied" his application for employment.[21] Plaintiff hired Patsy V. Bramlett, a "Rehabilitation Counselor and Vocational Consultant," to help prosecute his case.[22] Bramlett issued a "vocational assessment" on February 27, 2004, in which she assessed plaintiff's personal background, education, work experience, medical records, and other variables.[23] She concluded, based solely on plaintiff's education and past work experience, that he "was qualified to perform 45.23 percent of the jobs in the state and national labor

---

[19] Doc. no. 27 (Plaintiff's Evidentiary Materials, Vol. I), Ex. 7 (Spottswood deposition) at 8, 14-15.

[20] Doc. no. 24 (Defendant's Evidentiary Materials), Ex. A at Attachment 18.

[21] Doc. no. 1, ¶ 12.

[22] *See* doc. no. 27 (Plaintiff's Evidentiary Materials, Vol. I), Ex. 9.

[23] *See id.*, February 27, 2004 "vocational assessment."

market." According to Bramlett, that figure dropped to 26.23 percent if one believed, as the Postal Service did, that plaintiff was limited in his ability to walk, stand, climb, and lift heavy objects. Bramlett further concluded, based on such findings, that plaintiff "would be substantially limited in his ability to perform a class of jobs and a broad range of jobs in various classes, as compared to the average person with comparable skills and abilities."[24]

Defendant moved for summary judgment on July 2, 2004, and submitted his brief and evidentiary submissions in support of the motion the same day.[25] Plaintiff submitted his brief and evidentiary submissions opposing defendant's motion on August 2, 2004.[26]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment not only is proper, but also that it "*shall be* rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.

---

[24] *Id.* at 4.

[25] Doc. no. 22 (Defendant's Motion); doc. no. 23 (Defendant's Memorandum); doc. no. 24 (Defendant's Evidentiary Materials).

[26] Doc. nos. 27 and 28 (volumes I and II of evidentiary submission); doc. no. 30 (Brief in Opposition).

56(c) (emphasis supplied).  Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).  The motion pierces the pleadings, and "strikes at the heart of the claim.  In effect it argues that as a matter of law upon admitted or established facts the moving party is entitled to prevail."  Charles Alan Wright, *The Law of Federal Courts* § 99, at 705 (5th ed. 1994).

### III. DISCUSSION

The Rehabilitation Act of 1973 prohibits federal agencies from discriminating against otherwise qualified individuals with a disability. *See, e.g., Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir. 2000); *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999) (citing 29 U.S.C. § 791[27]).   A plaintiff establishes a *prima facie* case of discrimination under the Act by showing (1) he has a disability, (2) he is otherwise qualified for the position, and (3) he was subjected to unlawful discrimination as a result of his disability.  *See Mullins*, 228 F.3d at 1313; *Sutton*, 185 F.3d at 1207.

At issue in this case is whether plaintiff may satisfy the *first* element of his *prima facie* case:  *i.e.*, whether plaintiff has a "disability."  For purposes of 29 U.S.C. § 791, under which this action is brought, Congress has defined the term "individual with a disability" to mean any person who:

> (i)  has a physical or mental impairment which substantially limits one or more of such person's major life activities;

> (ii)  has a record of such an impairment; or

> (iii)  *is regarded as having such an impairment.*

29 U.S.C. § 705(20)(B) (emphasis supplied); *see also Mullins*, 228 F.3d at 1313. Plaintiff claims that he qualifies as an "individual with a disability" under the third part of this statutory definition.

---

[27] Among other matters, 29 U.S.C. § 791 requires federal agencies (including the United States Postal Service) to implement affirmative action plans for the "hiring, placement, and advancement of individuals with disabilities."  29 U.S.C. § 791(b).

The Eleventh Circuit recently explicated the "regarded as" disabled provision in *Rossbach v. City of Miami*, 371 F.3d 1354 (11th Cir. 2004), saying:

> A plaintiff is "regarded as" being disabled if he meets one of three conditions: (1) he has a physical impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or (3) has no physical or mental impairment but is treated by an employer as having such an impairment. 29 C.F.R. 1614.203(a)(5). Our Court has held that, for a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is "substantially limiting" and significant. *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir.1999).

*Rossbach*, 371 F.3d at 1359-1360. With respect to these factors, plaintiff claims that the physicians and Human Resources Specialist who reviewed his application for employment erroneously perceived that he had physical impairments which substantially limited him in the major life activity of working.[28]

According to regulations issued by the Equal Employment Opportunity Commission, the following factors "should" be considered when determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

---

[28] *See Mullins v. Crowell*, 238 F.3d 1305, 1313 (11th Cir. 2000) ("'Major life activities' are 'functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, *and working*.'") (emphasis supplied) (citing 29 C.F.R. § 1614.203(a)(3)).

(ii)  The duration or expected duration of the impairment; and

(iii)  The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2)(i)-(iii).[29]

The Eleventh Circuit instructs that the following factors also "should" be considered[30] in determining whether an individual is substantially limited in the major life activity of *working*:

(A)  The geographical area to which the individual has reasonable access;

(B)  The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C)  The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical

---

[29]  This provision falls under the "Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act" ("ADA").  29 C.F.R. § 1630.  The ADA was enacted by Congress in 1990 for the stated purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).  "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. . . ."  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 U.S.C. § 794(d)) (footnote omitted); *see also Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997).

[30]  The EEOC regulations state that a court "may" consider these additional factors.  29 C.F.R. § 1630.2(j)(3)(ii).  The Eleventh Circuit, however, has stated that courts "'should' consider these factors, in contrast to the regulation's instructions that these factors 'may' be considered."  *Mullins v. Crowell*, 228 F.3d 1305, 1314 and n.18 (11th Cir. 2000) (citing *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491-492 (1999)).

> area, from which the individual is also disqualified because of the
> impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).  These factors are meant to ensure that "with
respect to the major life activity of working . . . the term substantially limits means
significantly restricted in the ability to perform either a class of jobs or a broad range
of jobs in various classes as compared to the average person having comparable
training, skill and abilities."  29 C.F.R. § 1630.2(j)(3)(i).[31]  "The inability to perform
a single, particular job does not constitute a substantial limitation in the major life
activity of working."  C.F.R. § 1630.2(j)(3)(i).

Defendant admits that the physicians and Human Resources Specialist who
reviewed plaintiff's application for employment believed that plaintiff was physically
unable to perform the job of Postal Service Laborer.  Even so, defendant claims that
these individuals never contemplated that plaintiff was disabled:  *i.e.*, that he was
unable to perform either a class of jobs or a broad range of jobs in various classes.
Plaintiff responds that the vocational assessment prepared by Patsy Bramlett, the
Rehabilitation Counselor and Vocational Consultant retained by him, proves

---

[31] *See also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.
1997) ("When individuals claim that they are substantially limited in the major life activity of
'working,' the condition 'must significantly restrict [their] ability to perform either a class of jobs
or a broad range of jobs in various classes as compared to the average person having comparable
training skills and abilities.'") (quoting *Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1133 (11th
Cir. 1996), *amended on reh'g*, 102 F.3d 1118 (11th Cir. 1996).

otherwise.[32]

The parties have therefore narrowed their arguments to a single, discrete issue: do the findings in Bramlett's vocational assessment (hereinafter "the Bramlett evaluation" or "the Report") create a fact dispute as to whether defendant "regarded" plaintiff as being substantially limited in the major life activity of working?

A.    **Per Se Rule?**

The Bramlett evaluation was performed after the Postal Service denied plaintiff's application for employment.  Defendant argues that a plaintiff may *never* rely on a such a subsequently-created report to prove that defendant regarded him as being disabled in working.  According to defendant, the court must look only to the actual thought processes of the relevant decisionmakers at the time the employment decision is made.[33]  The argument has a common-sense appeal, but this court could not locate any Eleventh Circuit decision addressing this precise issue.  Even so, the Third Circuit had an opportunity to do so in *Deane v. Pocono Medical Center*, 142 F.3d 138 (3rd Cir. 1998) (*en banc*).  There, the plaintiff claimed that her former employer erroneously perceived her physical limitations to be far worse than they

---

[32] *See* doc. no. 30 (Plaintiff's Brief) at 1-2 ("The sole argument made by defendant is that it did not perceive [plaintiff] to be disabled.  In making this argument, however, defendant ignores that plaintiff has offered vocational testimony raising a fact issue regarding whether defendant's rationale in rejecting him as a candidate would allow a reasonable jury to conclude he was perceived by defendant as substantially limited in the major life activity of working.").

[33] *See* doc. no. 33 (Defendant's Reply Brief) at 9.

were.  *Id.* at 141-142.  She argued that her former employer therefore "regarded" her as being substantially limited in the major life activity of working, as those terms are defined under the Americans with Disabilities Act.[34]  *Id.* at 141-142, 144.  As part of her evidence, the plaintiff submitted an affidavit and report of a "vocational expert" who explained that, "had [plaintiff] been impaired to the extent allegedly perceived by [her former employer], she would have been precluded from consideration for employment, both within her chosen profession and within a wide range of jobs within her geographic region."  *Id.* at 145.  The Third Circuit did not expressly endorse the use of a plaintiff's post-decision vocational report for this evidentiary purpose, nor did it reject it.  *See id.* at 145 (holding, on other grounds, that there was a triable issue of fact as to whether former employer regarded the plaintiff as disabled).

Regardless, the Ninth Circuit cited *Deane* as persuasive authority for the following proposition:  the findings of a post-decision vocational assessment may create a triable issue of fact as to whether an employer regarded an individual as being substantially limited in the major life activity of working.  *See Deppe v. United Airlines*, 217 F.3d 1262, 1266 n.17 (9th Cir. 2000).  In *Deppe*, the district court had

---

[34] "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. . . ."  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 U.S.C. § 794(d)) (footnote omitted); *see also Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997).  Thus, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and *vice versa*."  *Cash*, 231 F.3d at 1305 n.2 (citing *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 n.2 (11th Cir. 1996)).

"concluded that [post-decision] expert opinions are irrelevant in 'regarded as' cases because they do not address [an employer's] actual perceptions of restrictions." *Deppe*, 217 F.3d at 1266.  The Ninth Circuit disagreed, saying:

> [The district court] misapprehends the import of an expert evaluation. As stated earlier, to succeed in a "regarded as" claim, an employee must show that he was perceived as having an impairment that substantially limits his ability to work.  Thus, because the vocational expert's report is relevant to the issue [of] whether [the employer] regarded [the employee] as disabled within the meaning of the ADA, we must conclude that the district court abused its discretion in excluding same.

*Id.* at 1266.

This court therefore will assume for the purposes of further discussion, but does not hold, that a plaintiff's post-decision vocational evaluation may establish that an employer erroneously regarded him as being substantially limited in the major life activity of working.

## B.     Merits of the Bramlett Evaluation

An evaluation of the merits of the Bramlett vocational assessment will determine whether plaintiff has raised a genuine issue of material fact that defendant regarded him as disabled.  *Cf. Broussard v. University of California, at Berkely*, 192 F.3d 1252, 1257 (9th Cir. 1999) (in context of ADA claim where plaintiff is actually disabled, "[w]hether [plaintiff] has raised a genuine issue of material fact that she is substantially limited in working depends upon an evaluation of the merits" of the

vocational assessment).

Vocational assessments have been used to determine whether an individual who suffers from *actual* physical limitations is substantially limited in the major life activity of working.  In that context, courts have evaluated the merits of an expert's report against the three factors enumerated in 29 C.F.R. § 1630.2(j)(3)(ii) and quoted *supra*.  *See, e.g., Broussard*, 192 F.3d at 1258-1259; *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 675 (7th Cir. 1998); *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943-944 (10th Cir. 1994).  In other words, courts examine whether the expert evaluation gave adequate consideration to:

> (A)   The geographical area to which the individual has reasonable access;
>
> (B)  The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (C)  The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).  Summary judgment may be granted if the vocational report fails to adequately address these factors, and the plaintiff's other evidence is insufficient to create a triable issue of fact.  *See, e.g., Bolton*, 36 F.3d at

944 (affirming award of summary judgment where experts failed to address plaintiff's "vocational training, the geographical area to which he has access, or the number and type of jobs demanding similar training from which [plaintiff] would also be disqualified"); *cf. Dalton*, 141 F.3d at 675-676 (summary judgment inappropriate where plaintiffs presented expert testimony identifying the geographical area to which plaintiffs had access, the number of jobs available to plaintiffs within that geographical area before and after onset of physical impairments, which in turn established that plaintiffs had suffered thirty-five to eighty-nine percent reductions in job prospects within that geographical area as a result of physical impairments); *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 785 (3rd Cir. 1998) (summary judgment inappropriate where vocational expert compared plaintiff's background "'to each of the almost 13,000 jobs listed in the [Department of Labor's] *Dictionary of Occupational Titles*,'" and determined that out of those 13,000 types of jobs, eight were suitable to plaintiff, and of those eight, all were "'very low employment opportunities'" in plaintiff's geographical area) (brackets and emphasis in original). *See also Broussard*, 192 F.3d at 1257-1259 (noting that expert report was "flawed" because while it calculated the number of jobs available to the plaintiff within a certain geographical area, the data used to derive those figures were inaccurate or irrelevant, and affirming award of summary judgment on that basis, as well as other

16

grounds).

The Bramlett evaluation is divided into seven sections.[35] The first three sections review plaintiff's personal background, his education, and his work experience. The fourth section reviews plaintiff's recent medical records, including the evaluation conducted by Dr. Ray Fambrough. As discussed earlier, Dr. Fambrough concluded that plaintiff may have difficulty performing a job which required him to stand, climb, and walk for "up to 8 to 10 hours at a time," particularly if he were required to carry "heavy 70 pound bags[,] etc." The fifth section discusses plaintiff's "subjective" perception of his physical limitations, or the lack thereof. The sixth section lists the results of reading, spelling, and arithmetic tests administered to plaintiff. In the seventh and final section, Ms. Bramlett discusses her conclusions, based upon consideration of all of the preceding sections:

> Mr. Scott reports that he was denied consideration for employment with the United States Postal Service based on a perception that he would be a moderate risk and that he had a disability, due to the presence of impairments from his prior military service. Despite his reports to the examining physician that he had no limitations in physical capacity, he was given restrictions to avoid prolonged walking, standing, climbing and heavy lifting.

> In forming a vocational profile prior to these limitations being assigned, Mr. Scott was qualified to perform 45.23 percent of the jobs in the state and national labor market, based on his education and work

---

[35] *See* doc. no. 27 (Plaintiff's Evidentiary Submission, Vol. I), Ex. 9, February 27, 2004 vocational assessment.

experience.  Assuming that Mr. Scott has the limitations described above, he would be qualified to perform 26.23% of the jobs in the competitive labor market consistent with his education and work experience.  Thus, he has sustained a loss of labor market access of 58%.

Based on my vocational analysis, if Mr. Scott were to be restricted as described above, he would be substantially limited in his ability to perform a class of jobs and a broad range of jobs in various classes, as compared to the average person with comparable skills and abilities.  He would be disqualified by the restrictions perceived by prospective employers from performing any job which involves heavy lifting, prolonged walking, standing and climbing (as described earlier in this report).  He would not be just restricted from performing his current occupation as a Copy Machine Technician or Equipment Technician,[36] but also from performing 58% of the jobs in the state and national labor market requiring similar knowledge, skills, abilities and work experience.  Given these restrictions, Mr. Scott would no longer have the capacity to perform a substantial number of jobs in a variety of classes in light of his work background and skills.  For example, Mr. Scott would no longer have the capacity to perform semi-skilled or skilled jobs such as Electronics Installer/Repairer, Radio and Telecommunications Equipment Installer/Repairer, Office Machine Repairer, Electrical Repairer, Electronic Inspector/Tester, and Electronic Equipment Assembler, to name a few.  He would be precluded from other occupations such as:  Construction Laborer, Shipping and Receiving Clerk, Material Handler, Sales Counter Clerk, Retail Salesperson, Cashier, Commercial Cleaner, Grounds Maintenance Worker, Warehouse Worker and Insulation Installer, among others.  The above jobs exist in large numbers at the unskilled, semi-skilled and skilled levels of work and represent a broad range of jobs in various classes in our regional, state and national economies.[37]

---

[36] As of February 27, 2004, when the Bramlett evaluation was issued, plaintiff was employed in this position by "N&L Enterprises" in Huntsville, Alabama.  *Id.* at 2 ("Work Experience").  Of course, whether plaintiff is currently employed is irrelevant to this action.  Plaintiff is arguing that defendant *erroneously* regarded him as disabled.

[37] *Id.* at 4-5.  The Bramlett evaluation also includes a "List of Data Sources," which indicates that the following resources were used to arrive at the report's conclusions:  (1) "Dictionary of Occupational Titles (D.O.T.) — Fourth Edition 1991"; (2) "Occupational Outlook Handbook 2002-

As a preliminary matter, the court notes that an individual may prove that he is substantially limited in working by establishing that he is significantly restricted in his ability to perform:  (1) a class of jobs or (2) a broad range of jobs in various classes. *See Sutton v. United Air Lines*, 527 U.S. 471, 492 (1999); 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).   The Seventh Circuit has described these as "alternate method[s] of proof."  *Dalton*, 141 F.3d at 676.  The Bramlett evaluation states in a conclusory manner, without explication, that plaintiff may be deemed "disabled" under either theory.  This court finds, however, that the evidence presented in the Report does not address the "class of jobs" method of proof.

"If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs."  *Sutton*, 527 U.S. at 492.

> For example, an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs.  This would be so even if the individual were able to perform jobs in another class, *e.g.*, the class of semi-skilled jobs.

---

2003 Edition"; (3) "Specific Occupational Selector published by United Stat[es] Publishing"; (4) "Labor Market Access Plus Computer Program marketed by Elliott and Fitzpatrick — Athens, Georgia"; (5) "Wage and Industry Surveys — 2003 Bureau of Labor Statistics, U.S. Department of Labor and Employment Service — State of Alabama"; (6) "Residual Access to Employment Quarterly and Employment Statistics Quarterly from the U.S. Bureau of the Census and U.S. Department of Labor, 2003"; and (7) "O-Net Dictionary of Occupational Titles — U.S. Department of Labor."  *Id.* at "List of Data Sources" attachment.  The Report does not include a section explaining the methodology used to examine these resources.

29 C.F.R. Pt. 1630, App. § 1630.2(j).  Here, the Bramlett evaluation does not articulate that plaintiff is so significantly precluded from any class of jobs.

The Report is more pertinent to the question of whether plaintiff's perceived limitations precluded him from a "broad range of jobs in various classes."  The EEOC has explained this concept in the following manner:

> [S]uppose an individual has an allergy to a substance found in most high rise office buildings, but seldom found elsewhere, that makes breathing extremely difficult.  Since this individual would be substantially limited in the ability to perform the broad range of jobs in various classes that are conducted in high rise office buildings within the geographical area to which he or she has reasonable access, he or she would be substantially limited in working.

29 C.F.R. Pt. 1630, App. § 1630.2(j).  The Bramlett evaluation attempts to present this very type of evidence.

The court's review, however, shows that the Report is deeply flawed.  First (and most fundamentally), the Report fails to identify "the geographical area to which plaintiff has reasonable access."  29 C.F.R. § 1630.2(j)(3)(ii)(A).  The Report refers to the "state and national labor market," but it does not discuss whether plaintiff, a resident of Toney, Alabama, in fact has reasonable access to such markets.  The report also refers to "the competitive labor market" and the "labor market," but these labels are too vague to clarify matters.  The Report also refers to "our regional . . . econom[y]."  This too is unhelpful.  Even if the court were to assume that "our

20

regional economy" refers to the geographical area to which plaintiff has reasonable access, there is no indication that any of the statistical evidence presented in the Bramlett evaluation was based on an evaluation of "regional" data. The Report's failure to identify the relevant geographical area makes it difficult, if not impossible, to determine whether plaintiff is precluded from a broad range of jobs in various classes. *See* C.F.R. § 1630.2(j)(3)(ii)(C) (explaining that whether plaintiff is precluded from a broad range of jobs in various classes should be determined by evaluating "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, *within that geographical area*, from which the individual is also disqualified because of the impairment") (emphasis supplied). *See also Dalton*, 141 F.3d at 675 (district court found that plaintiffs' initial affidavit "was too general to be useful" because "it looked at the entire country instead of the region to which [plaintiffs] might turn for jobs," but that a supplemental affidavit properly narrowed the analysis to "the jobs that might be available to the plaintiffs in Tippecanoe County, Indiana"); *Deane v. Pocono Medical Center*, 142 F.3d 138, 145 (3rd Cir. 1998) (vocational report properly examined number of jobs available in plaintiff's county of residence); *Bolton*, 36 F.3d at 944 (award of summary judgment affirmed in part because evidence failed to identify geographical area to which

plaintiff has reasonable access).

The Bramlett evaluation also fails to identify the types of jobs that remain available to plaintiff, even with his perceived disability. "[I]f a host of different types of jobs are available, one is not precluded from a broad range of jobs." *Sutton*, 527 U.S. at 492. Certainly, the Bramlett evaluation concludes that plaintiff "has sustained a loss of labor market access of 58%" with his perceived disability. The Report also lists eighteen occupations from which plaintiff would be disqualified. These figures only beg the question, however, of how many types of jobs remain available. *See Mondzelewski*, 162 F.3d at 785 (vocational expert properly compared plaintiff's disability profile "'to each of the almost 13,000 jobs listed in the [Department of Labor's] *Dictionary of Occupational Titles*,'" and determined that out of these 13,000 types of jobs, eight were suitable to plaintiff, and of those eight, all were "'very low employment opportunities'" in plaintiff's geographical area) (brackets and emphasis in original).

The EEOC regulations also state that the "number . . . of other jobs not utilizing similar training, knowledge, skills, or abilities" may be relevant to whether plaintiff is precluded from a broad range of jobs in various classes. Again, the Bramlett evaluation states that plaintiff "has sustained a loss of labor market access of 58%." This appears to address a decrease in job *types*, rather than a decrease in the available

number of job *positions*.  The percentage figure would still be unhelpful, even if it

addressed the latter proposition.  "The mere percentage of lost jobs does not identify

the number of jobs [plaintiff] is actually disqualified from performing due to his

[perceived] injuries.  It is common sense there is a difference between disqualification

from [fifty-eight] percent of ten million jobs versus disqualification from [fifty-eight]

percent of ten jobs."  *Heiman v. United Parcel Service, Inc.*, 12 Fed. Appx. 656, 663,

2001 WL 314515, at *5 (10th Cir. April 2, 2001) (internal citation omitted).[38]

The phrase "number and types of other jobs" in the EEOC regulations is "not

intended to require an onerous evidentiary burden." 29 C.F.R. Pt. 1630, App. §

1630.2(j).  "Rather, the terms only require the presentation of evidence of general

employment demographics and/or of recognized occupational classifications that

indicate the approximate number of jobs (*e.g.*, 'few,' 'many,' 'most') from which an

individual would be excluded because of [a perceived] impairment." *Id.*   The

Bramlett evaluation does not satisfy this minimum requirement.

Plaintiff argues that the findings in the Report are sufficient to pass summary

judgment in light of the Sixth Circuit's decision in *Burns v. Coca-Cola Enterprises,*

---

[38] *See also Deane v. Pocono Medical Center*, 142 F.3d 138, 145 (3rd Cir. 1998) (showing that without perceived disability, plaintiff had access to 41,000 non-agricultural jobs in her geographical region); *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 676 (7th Cir. 1998) (without disability, plaintiffs would have access to 21,200 jobs "after receiving some training" in the relevant geographical area); *Broussard v. University of California, at Berkely*, 192 F.3d 1252, 1257 (9th Cir. 1999) (showing (albeit with inaccurate data) that plaintiff's lifting restrictions precluded her from forty percent of 3,283,800 positions available in San Francisco area).

*Inc.*, 222 F.3d 247 (6th Cir. 2000).  In that case, the district court concluded that the plaintiff was disabled under the ADA "because his injury precluded him from performing at least 50% of the jobs that he was qualified to perform given his educational background and experience." *Id.* at 253.  The Sixth Circuit held that the district court did not err in so holding.  *Id.* at 256.  Even so, the Sixth Circuit did not specify whether the district court reviewed the 50% figure in light of the geographical area to which the plaintiff had access, and the number and types of jobs available to the plaintiff within that geographical area before and after his injury.  *See id.* at 253-256.  If the district court performed such an analysis, and the Sixth Circuit approved it, then this court is in accord with *Burns*.  If the district court adopted the 50% figure in a vacuum, without consideration of factors enumerated in the EEOC regulations, however, then this court is not persuaded by the Sixth Circuit's decision.

The court finds that the Bramlett evaluation fails to raise a genuine issue of material fact.  As plaintiff offers no other arguments on this issue, the court finds that defendant did not regard plaintiff as an "individual with a disability" for purposes of the Rehabiliation Act and, therefore, plaintiff may not satisfy the first element of his *prima facie* case.

## IV. CONCLUSION

Defendant's motion for summary judgment is due to be granted.   An

appropriate order will be entered contemporaneously herewith.

DONE this 18th day of March, 2005.

_____
United States District Judge